IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN C. MORRISON,

                Petitioner,                          ORDER

  v.

                                                  14-cr-121-jdp-1

UNITED STATES OF AMERICA,              17-cv-848-jdp

                Respondent.

---

ANNA F. NOVAK,

                Petitioner,                          ORDER

  v.

                                                  14-cr-121-jdp-2

UNITED STATES OF AMERICA,              17-cv-849-jdp

                Respondent.

---

Petitioners John C. Morrison and Anna F. Novak were co-defendants in criminal case in this court in which they were represented by separate retained counsel. They each pleaded guilty to distribution of a controlled substance analogs and income tax fraud. I sentenced Morrison to four years of prison and Novak to eight years. Morrison and Novak appealed, and their sentences and convictions were affirmed. *United States v. Novak*, 841 F.3d 721 (7th Cir. 2016). Petitioners, now represented jointly, contend that their pleas were induced by ineffective trial counsel, and they seek to vacate their convictions and sentences under 28 U.S.C. § 2255. Dkt. 1.[1]

---

[1] The filings in Morrison's and Novak's cases are nearly identical, so docket citations are to both cases unless otherwise indicated.

After conducting a preliminary review of the petitions under Rule 4 of the Rules Governing Section 2255 Cases in the United States District Courts, I conclude that it plainly appears that petitioners are not entitled to relief. The heart of petitioners' argument is that they would not have pleaded guilty if they knew that they would receive substantial prison sentences. But counsel's error in predicting the sentence ultimately imposed by the court does not constitute ineffective assistance of counsel. I will deny their motion for a briefing schedule and evidentiary hearing, and I will dismiss their petitions.

BACKGROUND

I draw the facts from the record of the underlying criminal case and the submissions in support of the petitions. I will assume that petitioners' factual allegations are true, except where they are contradicted by the record.

Petitioners sold products labelled as "herbal incense" from their retail store, JC Moon, in Ashland, Wisconsin. Customers bought the so-called incense and smoked it to get high; some customers got sick from consuming the incense, and some became dependent on it. A grand jury returned a thirty-five-count indictment charging petitioners with the knowing sale of controlled substance analogs and with tax fraud. *See United States v. Morrison*, No. 14-cr-121 (W.D. Wis. filed Dec. 10, 2014), Dkt. 1.

Novak retained Joseph Patituce to represent her; Morrison retained Nicholas Schepis. Patituce "led [petitioners] to believe he had experience defending federal analogue prosecutions." Dkt. 9, at 1. Schepis's defense strategy was to "raise [Morrison's] Alzheimer's and medical issues to explain that [Morrison] had no involvement in any sales of incense or filing the taxes." Dkt. 10, ¶ 5.

But in a February 2015 meeting without Schepis present, Patituce told petitioners that Schepis's strategy was "inconsistent with" and "prejudicial to" Novak's defense. *Id*. Patituce convinced Morrison to fire Schepis and hire another lawyer, Mark Wieczorek. Morrison says that even though he had Wieczorek as his own counsel, Patituce directed the defense for both defendants.

In late June 2015, Patituce and Wieczorek began discussing with petitioners the possibility of entering into a plea agreement. Patituce said his goal was to resolve the charges against petitioners "without prison." Dkt. 9, at 3. He encouraged Novak to consider any plea agreement that "involved probation, house arrest, or a minimal amount of time in local jail." *Id.* He "scared" petitioners by mentioning that a defendant in a Minnesota controlled-substance-analog case was sentenced to 17 years' imprisonment after trial. *Id.* He explained "that there were no guarantees regarding sentencing and the ultimate sentence was up to the judge," but "repeatedly" referred to "a sentence of probation or, at most, house arrest or minimal local jail time." *Id.* at 4. He told petitioners that they "should appeal if they received a prison sentence in excess of three years." *Id.* at 6–7.

In early July, petitioners entered into plea agreements. *See* No. 14-cr-121, Dkt. 52 and Dkt. 53. On August 27, 2015, petitioners pleaded guilty to distributing a controlled substance analog and to tax fraud. Novak and Morrison stated under oath at the plea hearing that they entered pleas knowingly and voluntarily, and that they understood that the sentencing decision was up to the court. On November 6, 2015, I sentenced Morrison to a below-guideline term of four years in prison and Novak to a below-guideline term of eight years. The remaining counts in the indictment were dismissed.

On direct appeal, petitioners challenged my acceptance of their guilty pleas, the sentences I imposed, and the constitutionality of the Controlled Substances Analogue Act, 21 U.S.C. § 813. On November 9, 2016, the Seventh Circuit affirmed their convictions and sentences. *United States v. Novak*, 841 F.3d 721 (7th Cir. 2016).

On November 9, 2017, petitioners filed these motions to vacate their convictions and sentences under 28 U.S.C. § 2255. Petitioners now allege that, as a result of the ineffective assistance of trial counsel, they didn't understand the plea agreements and that they believed "that they would receive nothing more than a probationary sentence." Dkt. 9, at 4.

ANALYSIS

Habeas "relief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). To prevail, each petitioner must show that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). Relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). An evidentiary hearing is not required if "the motion and files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000).

I conclude that no hearing is necessary because the record makes clear that petitioners' grounds for relief—three claims of ineffective assistance of counsel—are without merit. Claims for ineffective assistance of counsel are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a petitioner must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 39091 (2000). In the context of a guilty plea, the prejudice prong requires a showing that there is a reasonable probability that but for counsel's deficient performance, the petitioner would not have pleaded guilty but would have insisted on going to trial. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003).

Here, petitioners claim three deficiencies in their counsels' performance:

- Patituce "led Ms. Novak to believe he had previous experience defending federal analogue drug cases." No. 17-cv-849, Dkt. 9, at 8.

- Patituce told both petitioners "that going to trial would result in a lengthy prison sentence, but pleading guilty would result in probation or, at worst, house arrest or minimal local jail time." No. 17-cv-848, Dkt. 9, at 9; *see also* No. 17-cv-849, Dkt. 9, at 8–9.

- Wieczorek was a "straw man" hired by Patituce, who really directed Morrison's defense. No. 17-cv-848, Dkt. 9, at 9.

The first alleged deficiency is a nonstarter. Petitioners do not allege that Patituce actually lacked experience defending federal analogue drug cases. Nor do they allege that they would not have pleaded guilty if they had known that he lacked experience defending this particular type of case. And, in any case, showing that counsel lacked experience is not enough; a petitioner must show that counsel's performance was actually deficient. "The character of a particular lawyer's experience . . . does not justify a presumption of ineffectiveness" without

5

more. *United States v. Cronic*, 466 U.S. 648, 665 (1984). Petitioners are not entitled to relief on this ground.

The second alleged deficiency, based on counsel's predictions about sentencing, fares no better. "A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true." *Chicahakly v. United States*, 926 F.2d 624, 630 (7th Cir. 1991) (quoting *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975)). "An attorney obviously is not able nor is he expected to predict with precision the sentence a judge will impose in order to render effective assistance of counsel . . . ." *Id.* Apparently, Patituce predicted that petitioners would receive probation or at most a short period of incarceration. He was wrong. But petitioners concede that he also explained "that there were no guarantees regarding sentencing and the ultimate sentence was up to the judge." Dkt. 9, at 4. And the plea process in the underlying criminal proceeding ensured that petitioners understood their plea agreements and that those agreements were entered voluntarily. Their written, signed plea agreements listed the maximum penalties for the crimes to which they pleaded guilty. No. 14-cr-121, Dkt. 52 and Dkt. 53. Those maximum penalties were reviewed during petitioners' plea hearings, and petitioners testified under oath that they understood the penalties and had discussed them with their counsel. *See* No. 14-cr-121, Dkt. 104 and Dkt. 108. Petitioners testified under oath that they knew that sentencing decisions were up to the judge, and that they had not been told that they would get a particular sentence and had no reason to believe that they would get a particular sentence. *See* No. 14-cr-121, Dkt. 104, at 6–7, 20, and Dkt. 108, at 8–9, 24. Patituce's prediction that I was likely to impose a below-guideline sentence proved correct, so petitioners cannot establish that his sentencing analysis was

completely baseless. Under these circumstances, Patituce's incorrect sentencing prediction was not deficient performance. Petitioners are not entitled to relief on this ground.

This ends that analysis for Novak; she is plainly not entitled to relief.

The third alleged deficiency, which pertains only to Morrison, is more complex. Morrison makes three allegations against Wieczorek: that Wieczorek was merely a straw man for Patituce; that Wieczorek failed to put in enough effort into defending Morrison; and that Wieczorek uncritically adopted Patituce's incorrect sentencing prediction. Dkt. 9, at 9. Morrison contends that these deficiencies constitute "objectively unreasonable performance," and that he was prejudiced because he entered a plea agreement that he would have rejected, had he gotten an accurate prediction of his sentence.

Morrison's third argument about Wieczorek is essentially a repackaging of Novak's argument about Patituce, and it fails for the same reason: Morrison testified under oath that he knew that sentencing was up to the judge, that I could impose any sentence up to the statutory maximum, and that he had not been told he would get a particular sentence. The inability of Morrison's counsel to predict correctly his ultimate sentence is not ineffective assistance.

Morrison's first argument that Wieczorek was Patituce's straw man might raise the question about whether either Wieczorek or Patituce had a conflict of interest related to the representation of co-defendants in this case. But this is an issue that Morrison's counsel has not actually raised, and thus it is forfeited. *See United States v. Kirkland*, 567 F.3d 316, 321 (7th Cir. 2009).

Even if I gave Morrison the benefit of the doubt, he does not show any actual conflict of interest here. The argument would be that because Wieczorek was uncritically following

7

Patituce's litigation strategy, Patituce was actually functioning as counsel to both Novak and Morrison. But that's not a *per se* conflict. Sometimes "a common defense gives strength against a common attack." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 482–83 (1978)). This is a case in which a coordinated defense, or even joint representation, might make sense. Co-defendants are husband and wife, so it would seem unlikely that one co-defendant would be naturally inclined to shift responsibility to the other to gain advantage for herself.

Morrison suggests, though, that Patituce advised that Morrison's Alzheimer's defense was inconsistent and prejudicial to Novak's defense. So, the argument might go, Patituce got Morrison to give up a viable defense with a false prediction of a lenient sentence, solely to advantage Novak. If Wieczorek completely abrogated his duty to advise Morrison, Patituce might have an actual conflict of interest that would support an ineffective assistance claim under *Cuyler*. In *Cuyler*, two defense attorneys represented three co-defendants. 446 U.S. at 338. In the trial of the first defendant, the attorneys declined to put on a defense case, possibly so that they could avoid exposing certain witnesses to cross examination, so that they could save those witnesses for the trial of the other defendants. *Id.* at 338–39. Because the interests of the co-defendants may have been adverse, the Supreme Court remanded the case so that the lower court could determine whether the defense attorneys had an actual conflict of interest that adversely affected their performance—anything less would not implicate the defendant's Sixth Amendment rights. *Id.* at 350.

But the main gap in the argument here, which Morrison makes no effort to fill, is how Morrison's interests and Novak's are actually adverse. Morrison does not explain how his Alzheimer's defense would actually work any disadvantage to Novak. For the most part, both

8

defendants mounted the same defenses: that the herbal incense was not a controlled substance analog and that they did not knowingly sell anything illegal. At no point did Novak contend that her culpability was diminished by Morrison's. She did not contend, for example, that Morrison was the brains of the operation, and that she was an unwitting participant. As it turns out, Morrison used his Alzheimer's as a mitigating factor at sentencing. I substantially credited this argument, which is why Morrison got a shorter sentence than Novak. Nothing about Morrison's health problems worked any disadvantage to Novak. On the contrary, Novak argued that Morrison needed her assistance, and that this militated in favor of a shorter sentence for her, too. *See* No. 14-cr-121, Dkt. 71, at 13. I conclude that even if I accept the truth of Morrison's allegation that Wieczorek was largely directed by Patituce, Morrison has failed to show any actual conflict of interest that adversely affected his counsel's performance.

A second problem with Morrison's petition is that the record belies his contention that Wieczorek relied exclusively on Patituce so that Wieczorek was "nothing more than a warm body." No. 17-cv-848, Dkt. 9, at 9. The cases Morrison cites in support of his argument concern the complete denial of counsel during certain stages of the criminal proceeding. *See United States v. Ash*, 413 U.S. 300 (1973) (holding that the complete denial of counsel at a postindictment photo array identification procedure did not violate the Sixth Amendment); *Von Moltke v. Gillies*, 332 U.S. 708 (1948) (plurality opinion) (recognizing the Sixth Amendment right to counsel when entering a plea). Morrison was actually represented by counsel throughout the underlying criminal case. Morrison's argument seems to be that he was constructively denied counsel because Wieczorek failed to function as Morrison's advocate. A complete failure "to subject the prosecution's case to meaningful adversarial testing" would be the type deficient performance from which prejudice may be presumed. *Cronic*, 466 U.S. at

659. But the record shows that Wieczorek *did* function as Morrison's advocate: he filed objections to the presentence report and a sentencing memorandum with supporting evidence, *see* No. 14-cr-121, Dkt. 62 and Dkt. 69, and he questioned witnesses and argued on Morrison's behalf at sentencing, *see* No. 14-cr-121, Dkt. 114. So we aren't in *Cronic* territory.

Sometimes Wieczorek did piggy-back on Patituce's work. Morrison joined Novak's *Daubert* motion attacking the drug analog evidence. *See* No. 14-cr-121, Dkt. 34 (Morrison's motion to join Novak's motion). Patituce conducted the hearing for the defense, although Wieczorek appeared so he could have participated if Morrison's separate interests were somehow implicated. *See* No. 14-cr-121, Dkt. 54 (transcript of *Daubert* hearing). Wieczorek lodged objections to his presentence report that were similar to Novak's. *Compare, e.g.*, No. 14-cr-121, Dkt. 61 (Novak's objections to the presentence report) *with* No. 14-cr-121, Dkt. 62 (Morrison's substantially similar objections). But this kind of piggy-backing does not even suggest deficient performance in a case in which the co-defendants mount substantially the same defenses against the same criminal conduct. Morrison's conclusory statements that Wieczorek was just a warm body do not entitle him to a hearing.

I conclude that Morrison has not shown any actual conflict of interest that affected the counsel provided by either Wieczorek or Patituce, nor has Morrison shown that Wieczorek simply failed to function as counsel. The record in this case shows that Morrison is plainly not entitled to relief.

Under Rule 11 of the Rules Governing Section 2255 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. I cannot issue certificates of appealability unless petitioners make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires them to demonstrate "that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Although Rule 11 allows me to ask the parties to submit arguments about whether a certificate should issue, it is not necessary to do so in this case. For the reasons explained above, I conclude that petitioners have not made a showing, substantial or otherwise, that they meet the requirements for a certificate of appealability. Thus, I will not issue petitioners a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner John C. Morrison's motions to vacate his conviction and sentence and for a briefing schedule and evidentiary hearing, No. 17-cv-848, Dkts. 1–3, are DENIED.

2. Petitioner Anna F. Novak's motions to vacate her conviction and sentence and for a briefing schedule and evidentiary hearing, No. 17-cv-849, Dkts. 1–3, are DENIED.

3. A certificate of appealability for each petitioner is DENIED. Either petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered March 6, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge